The court, therefore, concludes as a matter of law:

1. That export value, as that value is defined in section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, is the proper basis for appraisement of the merchandise here involved.

2. That the presumption of correctness attaching to the appraiser's return of value for the merchandise in question has not been overcome.

3. That the export value for the merchandise herein is represented by the appraised values.

Judgment will be entered accordingly.

(R.D. 11759)

Schieffelin & Co. *v.* United States

Entry Nos. 71960; 77000.

(Decided December 30, 1971)

*Barnes, Richardson & Colburn* (*James F. Donnelly, Hadley S. King,* and *James S. O'Kelly* of counsel) for the plaintiff.

*L. Patrick Gray III,* Assistant Attorney General (John A. Winters, trial attorney), for the defendant.

RICHARDSON, Judge: The merchandise of these reappraisement appeals consists of Cognac brandy, described on the invoices as Bras Arme Cognac in tenth of a gallon sizes (1/10), which was produced in Cognac, France, by Jas. Hennessy & Co. and exported to the United States on September 26, 1964 (entry 71960) and November 13, 1964 (entry 77000). The brandy was entered at the port of New York at the invoice price of $21.495 per case of 24 tenth size bottles containing 2.4 gallons, net packed, and advanced in value upon appraisement to $22.86 per case, net packed, on the basis of export value as defined in 19 U.S.C.A., section 1401a(b)[1] (section 402(b), Tariff Act of 1930, as amended by the Customs Simplification Act of 1956).

It is agreed by the parties that appraisement was based upon "similar" brandy produced in Cognac, France, by Martell & Co. Neither party disputes the statutory basis for appraisement of the merchandise at bar. It is contended by the importer, and resisted by the Government, that appraisement should have been predicated upon the prices for Hennessy brandy (*such* merchandise) rather than the prices for Martell brandy (*similar* merchandise), and also that deductions should have been made for a distributor's discount of 7½ per cent and advertising expenses of $2.00 per case.

The record before the court consists of the testimony of a managing director of the exporter and that of the board chairman, president and chief executive officer of the plaintiff-consignee, two reports of a customs representative relative to interviews conducted with personnel of Hennessy and Martell in connection with sales of brandy for exportation to the United States in and about 1963 and 1964 (defendant's exhibits B and C), and a letter from plaintiff's said board chairman to the appraiser of merchandise at New York relative to special advertising expenses incurred in 1964.

As plaintiff's counsel points out in the brief (plaintiff's brief, page 15), confirmed by a reading of the customs representative's reports in exhibits B and C, both Hennessy and its competitor Martell sold Cognac brandy for exportation to the United States under almost identical conditions. That is to say, both producers sold this brandy in equivalent size bottles to exclusive distributors in the United States, among others—Hennessy to plaintiff in tenth size bottles packed 24 bottles to a case containing 2.4 gallons (Bras Arme), and Martell to Browne Vintners & Co. in ⅘ pint size bottles packed 24 bottles to a

[1] (b) For the purposes of this section, the export value of imported merchandise shall be the price, at the time of exportation to the United States of the merchandise undergoing appraisement, at which such or similar merchandise is freely sold or, in the absence of sales, offered for sale in the principal markets of the country of exportation, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature and all other expenses incidental to placing the merchandise in condition, packed ready for shipment to the United States.

case containing 2.4 gallons (three star); both producers gave a discount to their United States distributors—Hennessy gave a 7½ per cent discount, and Martell gave a 10 per cent discount; and both producers made a deduction for "advertising expenses" incurred in the United States market following a change in 1964 from a prior practice under which the producers reimbursed their distributors for these expenses on a shared basis.

At the trial Hennessy director Gerald deGeoffre deChabrignac testified on cross-examination (R. 21–22):

BY MR. WINTERS:

Q. What was your arrangement with Schieffelin for the payment of advertising expenses incurred by them in advertising your product in the United States in 1964?—A. In 1964 our arrangement was a deduction on shipments made to Schieffelin, which deductions amounted in toto to $286,000, approximately. To this sum Messrs. Schieffelin have added a certain amount from their own pocket, and these two sums formed the bulk of the advertising budget that was spent in 1964 for Hennessy Cognac in the U.S.A. market.

Q. What was your arrangement before 1964?—A. Before 1964 the Hennessy advertising budget was made of two parts, one supplied by Messrs. Schieffelin, as previously described; the other one supplied by Messrs. Hennessy direct.

Q. Was there a change in your invoicing the advertising allowance between 1963 and 1964?—A. We had no advertising allowance deductions before December, 1963.

Q. And what happened in December, 1963?—A. In December, 1963, we felt, on the one hand, as we did feel for several other markets prior to that date, or after that date, that it would be a better method to deduct advertising allowances from the invoicing price, rather than to pay our advertising by remittances. We did that with several agents in which we had full confidence, as is the case with Messrs. Schieffelin, because obviously, it takes a different approach to let the agent handle the advertising budget from monies he has than handle it from monies we pay him for this handling.

Asked on cross-examination to explain the purpose behind this change in handling the advertising expenses (net invoicing system) plaintiff's board chairman, William Jay Schieffelin, III, testified (R. 43–44):

A. I think there are two purposes. The primary one is an interest on my part in simplifying our operational procedures in the conduct of our business; and secondly, a mutually agreed upon decision, as Mr. deGeoffre referred earlier, to a practice which they have adopted in various parts of the world, both before and after 1963, '64 of net invoicing; it is very much simpler.

Q. So before January 7, 1964 you did not have net invoicing?— A. I believe that is correct, sir.

Q. And afterwards you adopted this more efficient bookkeeping system?—A. Right.

Q. How were additional monies transmitted to you during 1964, which made up for the additional expenses you incurred for extra advertising campaigns?—A. They were done via the invoicing procedure, as has been described earlier; in other words, on the basis of $2.00 per case deducted from, and bringing down to the earlier referred to net/net price.

With respect to the distributor's discount, Mr. deGeoffre testified on direct examination (R. 12):

Q. Will you please describe the terms and conditions of sale which existed at that time in transactions with Schieffelin & Co. concerning these sales of Bras Arme Tenths?—A. I will exactly repeat what I told them then, to the American agent who came, and I suppose that you want me to explain that we producers sell, and have sold in '64 that cognac at the full f.o.b. world price, less the usual discount which is normally to all our distributors the world over granted as a distributor discount.

Q. And in 1964 what was the amount of that discount so far as the plaintiff here is concerned—sales to the United States?—A. Seven and a half per cent.

Mr. deGeoffre went on to point out that the discount given to plaintiff was lower than the discount granted to distributors by Hennessy in its other markets. On cross-examination the witness testified that the discount given plaintiff had been agreed upon some 30 years ago (R. 28). And deGeoffre's testimony relative to the constancy of the discount was corroborated by the witness Schieffelin (R. 48).

With respect to the export price of the Bras Arme Cognac tenths to plaintiff, the witnesses spoke only in terms of a net price of $21.495 per case containing 2.4 gallons which they say they paid and received, respectively. There is evidence in the record, however, of a full f.o.b. price to which but passing reference was made in the testimony of the witness deGeoffre as noted herein. A price list dated July 1, 1963 [exh. A] and an invoice from Hennessy to plaintiff dated November 29, 1963 on the usual terms of a 7½ per cent distributor's discount [exh. F] attached to the customs agent's report, defendant's exhibit B, in evidence indicates that the full f.o.b. price of the Bras Arme Cognac tenths was $25.40 per case of 24/2 bottles containing 2.4 gallons. Plaintiff admits that figure to be the full f.o.b. price. See plaintiff's brief page 10 where the following statement appears: *"The prices set forth in Exhibits A and B of the report show the full f.o.b. price French port and include the distributor's discount and advertising discount.* [Emphasis added.] And a second price list dated January 15, 1965 [exh. B] attached to said defendant's exhibit B indicates that this full f.o.b. price remained constant during 1964, the period in issue.

In view of the concession made by the parties relative to the standard utilized in the appraisement of the instant merchandise, it is reasonable to assume that both defendant's exhibit C, the customs agent's report dated February 17, 1965 which deals with the Martell merchandise, and defendant's exhibit B which deals with the Hennessy merchandise and which is referred to in defendant's exhibit C, were before the appraiser at the time the merchandise at bar underwent appraisement. And it is obvious from the prices set forth in the Martell report (exhibit C) that the appraiser disallowed the advertising allowance paid by Martell to its United States distributor in arriving at the appraised value for the Hennessy brandy of the instant importation.

On the basis of the evidence of record the instant merchandise should not have been appraised on the basis of "similar" Martell Cognac brandy but should have been appraised on the basis of Hennessy brandy, bearing in mind the statutory priorities mandated by 19 U.S.C.A., section 1401a(f)(4) (section 402(f)(4), Tariff Act of 1930, as amended by the Customs Simplification Act of 1956). In this respect the court agrees with the contention of the plaintiff. The full f.o.b. Hennessy export price to the United States of $25.40 was stable [2] during the entire 1963–64 period, and was comparable to the Hennessy prices in the home market and third country markets. Under these circumstances, there is no question in the court's mind but that the Hennessy price of $25.40 [3] per case of 24 tenths of Bras Arme Cognac brandy fairly reflected the market value of the merchandise at bar, and all other conditions conducive to appraisement being present, this price should have been utilized in the appraisement of the instant merchandise.

In all other respects, however, the court is in agreement with the principles applied by the appraiser in making deductions against a full f.o.b. price to find a statutory export price.

The distributor's discount paid by Hennessy to plaintiff at the rate of 7½ per cent is, on the record in this case, an allowable deduction against the full f.o.b. price in the court's opinion. The court is satisfied that the discount was actually given in connection with the involved merchandise, had been given for some 30 years, and in all respects appears to be a genuine distributor's discount.

On the other hand, the advertising allowance in issue is not, in the

---

[2] By comparison the Martell full f.o.b. price during the same period on which the appraisement herein was based changed, going from a price of $24 per case of 24–⅘ pints of three star Cognac brandy to a price of $25.40 per case.

[3] Although this price is higher than that contended for by the importer, such a price may nevertheless constitute a basis for a finding of value in a reappraisement proceeding even in the absence of an appeal for reappraisement by the regional commissioner of customs. See *In re Megroz* (CCNY 1892), 49 F. 828.

court's opinion, an allowable expense. We are not concerned here with an accrued item of expense which influences the export price demanded and paid between foreign producer and American purchaser. The claimed item of expense is an expense connected solely with the *resale* of the imported product in the United States. In this posture the advertising expense has, to paraphrase the words of our appeals court, nothing to do with the price at which the involved merchandise was sold in France for exportation to the United States, although it did, to some extent affect the profits of the producer. See and compare *Kraft-Phenix Cheese Co.* v. *United States*, 19 CCPA 371, 374, T.D. 45510 (1932), wherein the court rejected the contention of the importer that expenses incurred abroad by the foreign manufacturer in conducting a local advertising campaign influenced the foreign market value of the imported product.

The advertising expenditures directed at the United States market in this case are, in the court's opinion, the manifestation of a joint venture undertaken by the plaintiff-distributor and the foreign producer, who regarded plaintiff as its "agent", to promote the resale of the Hennessy products to their mutual advantage. And although the advertising allowance was taken into consideration under the net invoicing procedures initiated by Hennessy and plaintiff in 1964, this arrangement only subserved the convenience of the parties in "tracking" the advertising expenditures, the amount of which was as yet undetermined as of the time of preparation of invoices covering export transactions. Therefore, as to this item the court fully agrees with defendant when it states (defendant's brief, page 22) :

> [T]he manufacturer and the plaintiff were engaged in a relationship distinct from sales and purchases of cases of Cognac. The relationship appeared to be that of agency, whereby the manufacturer procured about $300,000 worth of advertising for its product through the aid of its agent for this purpose, the plaintiff.

On the record in this case the court finds as facts :

1. That the merchandise of the reappraisement appeals herein consists of Bras Arme Cognac brandy in tenth of a gallon sizes, produced in France by Jas. Hennessy & Co. and exported therefrom on September 26, 1964, and November 13, 1964.

2. That said merchandise was appraised upon entry under export value as defined in 19 U.S.C.A., sections 1401a(b) and 1401a(f)(4)(D) (sections 402(b) and 402(f)(4)(D), Tariff Act of 1930, as amended by the Customs Simplification Act of 1956) at a unit value of $22.86 per case, net packed on the basis of similar merchandise produced in France by Martell & Co.

3. That at the time of exportation of said merchandise to the United States, such merchandise was freely sold in Cognac, France, the prin-

cipal market, by Jas. Hennessy & Co. to the plaintiff herein, a selected purchaser, for exportation to the United States in the ordinary course of trade and in the usual wholesale quantities at a price of $25.40 per case, less a 7½ per cent distributor's discount, packed, which price fairly reflected the market value of such merchandise.

On the basis of the foregoing facts the court concludes as matters of law:

1. That export value as defined in 19 U.S.C.A., sections 1401a(b) and 1401a(f)(4)(A) (sections 402(b) and 402(f)(4)(A), Tariff Act of 1930, as amended by the Customs Simplification Act of 1956) is the proper basis for determination of the value of the merchandise covered by the reappraisement appeals herein.

2. That such export value is $25.40 per case, less a 7½ per cent distributor's discount, packed.

Judgment will be entered herein accordingly.